## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PATRICIA G. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-88-GKF-FHM |
| | ) | |
| STATE OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the court is the Motion for Summary Judgment [Dkt. #24] filed by defendant, the State of Oklahoma ("State").  The court conducted a hearing on the motion on November 12, 2013.[1]

Plaintiff Patricia G. White ("White") is a former employee of the Oklahoma Office of Juvenile Affairs ("OJA") who worked as a Food Service Specialist at the L.E. Rader Center in Tulsa ("Rader") from June 1, 2009 to August 20, 2009.   She filed suit against her former employer on November 29, 2011, in Tulsa County District Court, asserting claims of race discrimination, discrimination under the Americans with Disabilities Act ("ADA") and ADA retaliation.  [Dkt. #2, Ex.1, Petition].  White claimed she has lost past and future wages and benefits, suffered humiliation and emotional distress, and "has otherwise been damaged," and she sought damages "in excess of $10,000, interest, costs, attorneys' fees and injunctive relief.

---

[1] During the hearing, the court denied plaintiff's Motion for Partial Summary Judgment  [Dkt. #23] on the State's affirmative defense of failure to mitigate damages.

[*Id.*].  The State removed the case to federal court on the basis of federal question jurisdiction. [Dkt. #2].

The State seeks summary judgment on all of White's claims, asserting:

(1)  White has failed to establish a prima facie case of race discrimination; even if she has established a prima facie case, the State has presented evidence of a legitimate non-discriminatory reason for her termination, and plaintiff has failed to produce any evidence rebutting the State's proffered reason;

(2)  White has failed to establish a prima facie case of either ADA discrimination or ADA retaliation; even if she has established a prima facie case of either claim, the State has presented evidence of a legitimate non-discriminatory, non-retaliatory reason for the termination, which plaintiff has failed to rebut.

(3)  The State is immune from monetary damages for plaintiff's ADA claims.

## I. Material Facts

On or about June 1, 2009, White was hired by the OJA to work at Rader as a Food Service Specialist.  [Dkt. #24, Ex. 1. Affid. of Mike Moriarity, ¶1].  During her few months of employment at Rader, White was a probationary employee.  Pursuant to OJA policies and procedure, probationary employees may be discharged at any time during the probationary period without the right of appeal.  [*Id.*, ¶2].

Rader has a policy prohibiting cell phones in the facility.  [*Id.*, ¶3; Dkt. #24, Ex. 7, Moriarity Letter].  Additionally, on June 2, 2009, the governor signed Oklahoma Senate Bill 1064, which made it a felony in Oklahoma to knowingly, without authority, bring a cell phone into a secure area of a state penal institution. 57 Okla. Stat. § 21 E.  Due to an emergency clause, the bill became effective immediately.

On August 7, 2009, Juvenile Security Officer Jeanne Whitehead, formerly Jeanne Lott ("Lott") and Youth Guardian Specialist Carolyn McElroy, both of whom were assigned to the front security gate of Rader, searched White's purse and found a cell phone in it. [Dkt. #24, Ex. 2, Lott Affid., ¶¶1, 3; Ex. 3, McElroy Affid., ¶¶2, 4]. Both testified they believed White was trying to conceal the phone because it was wrapped closely with newspaper and concealed in her purse. [*Id.*, Ex. 2, ¶3; Ex. 3, ¶4].[2] White did not, at the time, tell Lott or McElroy that her phone was in her purse by accident. [*Id.*, Ex. 2, ¶¶4-5; Ex. 3, ¶5]. McElroy, a black female, reported the incident in a Multipurpose Report (a form used for incident reports) because cell phones were not permitted in the facility. [*Id.*, Ex. 3, ¶¶3, 8]. She testified that if White had made any statement suggesting it was accidental, she would have included such a statement in the Multipurpose Report. [*Id.*, Ex. 3, ¶6]. Further, she stated she would not have reported the incident regarding White's phone if she had believed it was an accident instead of White trying to conceal the phone in order to bring it into the facility. [*Id.*, Ex. 3, ¶7]. According to the report, White—with Lott's permission—left the phone at the security checkpoint; she later came back, asked for the phone and took it to her car. [*Id.*, Dkt. #24, Ex. 4, Multipurpose Report].

White admitted in her deposition that during training for her job, she was provided with the policy that cell phones were not permitted at Rader, and she had no doubt—at any point during her employment—that cell phones were not permitted by the Rader policy. [Dkt. #24, Ex. 5, White Dep., 28:6-13]. She testified she typically brought her phone with her to the facility, but left it in her car while she was at work. [*Id.,* Ex. 5, White Dep., 28:22-25].

---

[2] White testified the phone was "more or less" wrapped in a brochure she obtained one or two days before while visiting a property with storage sheds about a mile down the road. [Dkt. #28, Ex. 2, White Dep., 32:2-13, 34:8-35:4; Dkt. #24, Ex. 5, White Dep., 38:2-4]. She said that she folded the brochure up and placed the phone in it to keep moisture at the property from getting on the phone. [*Id.,* 35:19-36:7]. Further, she testified she left the phone wrapped in the brochure up to the time it was found in her purse on August 7. [Dkt. #24, Ex. 5, 38:5-8].

Shortly after reviewing the August 7, 2009 Multipurpose Report on White, Rader superintendent Mike Moriarity recommended to OJA that White be terminated based on the cell phone incident, because cell phones were banned from Rader.  [Dkt. #28, Ex. 3, Moriarity Dep., 4:25-5:13; Dkt. # 24, Ex. 1, Moriarity Affid., ¶3].  On the morning of August 20, 2009, White's supervisor, Barbara Smith, asked White to come with her to speak with Moriarity because "the issue about the cell phone ha[d] come up again."  [Dkt. #24, Ex. 5, White Dep., 71:16-72:2].  White testified she explained to Moriarity what happened concerning the cell phone and asked him how the situation would affect her job.  [*Id.*, White Dep., 72:14-73:9].  Moriarity told her he wasn't sure, but all of the paperwork had been forwarded to Oklahoma City, and he did not have the final decision.  [*Id.*, 73:9-17].

Moriarity was never advised of any complaint by White concerning lack of handicapped parking, nor did White mention any problem regarding availability of handicapped parking during his August 20, 2009 meeting with her.  [Dkt. #24, Ex. 1, Moriarity Affid., ¶¶12-13].

During the afternoon of August 20, 2009, White left a handwritten signed note at the front security gate, stating, "8-20-09 As of 5:00pm today, I am returning the keys & I.D. badge assigned to me by L.E. Radar.  God Bless You Patricia White."  [Dkt. #24, Ex. 9].  Moriarity, who received White's note on August 21, 2009, believed it to be a resignation note.  [Dkt. #24, Ex. 1, Moriarity Affid., ¶5].  He forwarded the note to Liz Davis and White's supervisor, Barbara Smith, indicating in the "Subject" line "Resignation" and notified OJA that White had resigned. [Dkt. #24, Ex. 1, Moriarity Affid., ¶6; Ex. 6, Moriarity Email].

White testified she did not show up for work on Friday, August 21, 2009, and did not call Smith to tell her she would not be coming in.  [Dkt. #24, Ex. 5, White Dep., 87:13-19]. Thereafter, White's physician sent Rader's Human Resources Department a series of "release

from work" forms which successively released her for the periods of August 21, 2009 to August 24, 2009, August 24, 2009 to August 28, 2009, and August 31, 2009 to September 9, 2009. [Dkt. #28, Ex. 3 at 6-8].

Moriarity testified that on or about August 25, 2009, he learned from OJA that White was claiming she had not resigned. [Dkt. #24, Ex. 1, Moriarity Affid., ¶7].  According to Moriarity, OJA also informed him it had previously determined to terminate White due to the cell phone incident, but her "resignation" had alleviated the need to terminate her.  However, he stated, "[S]ince Plaintiff had allegedly not resigned, OJA instructed me to proceed with the termination, as originally intended."  [*Id.*, ¶8].  Moriarity testified, "Per OJA's instructions, I then revised Plaintiff's separation papers to indicate 'termination.'" [*Id.*].  He stated that OJA made the final decision regarding White's termination based upon his recommendation, and his recommendation to terminate her was "due to the August 7, 2009 cell phone incident."  [*Id.*, ¶9].

The same day White was written up for the cell phone violation (August 7, 2009), Lott and McElroy observed another individual, Linda Triplett, trying to conceal her phone inside an eyeglass case in her purse, in order to bring it into the facility.  Triplett, who is white, stated she was expecting a phone call. [*Id.*, Ex. 2, ¶6; Ex. 3, ¶10; Dkt. #28, Ex. 3, Moriarity Dep., 52:6-7]. Both Lott and McElroy reported the incident in Multipurpose Reports.  [*Id.*, Ex. 2, ¶7; Ex. 3, ¶11].

Moriarity testified he reviewed the incident reports regarding Triplett attempting to sneak her phone into Rader and notified OJA shortly after the occurrence.  [*Id.*, Ex. 1, ¶10].  Triplett was not an employee of Rader but instead was an employee of the Sand Springs School District assigned to teach juveniles at Rader.  [*Id.*, ¶11].  OJA did not have the authority to terminate Triplett from her employment with the school district, but did have the authority to ban her from

5

the Rader facility.  [*Id.*, ¶11].  On September 1, 2009, she was banned from Rader for violating the cell phone policy [*Id.,* Ex. 7, 9/1/09 Letter from OJA to Lloyd W. Snow, Sand Springs Public Schools].

On September 5, 2009, another Rader employee, Jennifer Chance, was caught trying to sneak in a phone by concealing it in her bra.  An incident report was submitted to Moriarity, and Chance was subsequently terminated.  [*Id.*, Ex. 1, ¶14; Ex. 8, Multipurpose Report and Letter to Chance].[3]

White testified she complained two or three times a week to people at the security desk that although she had a handicapped parking decal in her car, and the parking lot had handicapped parking spots, she had trouble finding a spot because vehicles without handicap decals were parking in the handicapped parking spots.  [Dkt. #24, Ex. 5, White Dep. 108:5-109:17].  She testified that she did not talk to her supervisor about the problem because she assumed it was not her supervisor's responsibility.  [*Id.*, 108:25-109:4].  She assumed security was responsible for dealing with handicapped parking.  [*Id.*, 109:5-11].  White testified that one time she contacted an administrator, Liz Davis, who said she would be in touch with somebody in security, but White never followed up with her.  [*Id.*, 109:20-24].

In her deposition, plaintiff testified she believed she was written up for the cell phone incident because she is black, and in retaliation for complaining about handicapped parking.  [*Id.*, 66:2-19].  She was unable to identify whether the person who found the phone in her purse was Lott or McElroy, but she testified it was the "white person" (Lott). [*Id.*, 66:25-67:12]. She said that when she came in on the morning of August 7, she complained to Lott that she had to park far away—but not specifically about there being no handicapped parking that day.  [Dkt. #28,

---

[3]In her deposition, White testified she agreed Chance, who was black, was properly terminated because she was trying to sneak in her phone. [Dkt. #24, Ex. 5, White Dep., 122:21-25].

Ex. 2, White Dep., 116:14-118:14].  She said she complained to Lott again on August 20.  [*Id.*, 118:11-17].

However, White testified she had no reason to believe Moriarity's recommendation of termination had any relationship to her complaints about handicapped parking.  [*Id.*, 119:1-6]. She did not think he was even aware she had complained about handicapped parking, and she testified there was no discussion about handicapped parking in the August 20 meeting with Moriairty.  [*Id.*, 119:7-17].  She believes, though, that the Multipurpose Report about her cell phone being hidden in newspaper was written up in retaliation because "some key persons" were irritated over her complaints about handicapped parking.  [*Id.*, 119:18-120:13].  She could not identify the "key persons," and admitted she had no facts to support her suspicion.  [Dkt. #24, Ex. 5, 120:14-121:4].

Both Lott and McElroy testified they never heard plaintiff make any complaint regarding the unavailability of handicapped parking.  [Dkt. #24, Ex. 2, Whitehead Affid., ¶8; Ex. 3, McElroy Affid., ¶12].

On October 23, 2009, White filed a Charge of Discrimination with the Oklahoma Human Rights Commission ("OHRC"), alleging she had been discriminated against based on her disability and race and retaliated against after complaining about the unavailability of handicapped parking.  [Dkt. #28, Ex. 1 at 2].  On November 2, 2010, the OHRC issued a Determination concluding that there was reasonable cause to believe the complaint was true and that the OJA had engaged in a discriminatory act as alleged. [*Id*, Ex. 1 at 4].  A Case Summary, also dated November 2, 2010, discussed the basis for the OHRC's decision.  [*Id.* at 5-6].  Both documents were signed by John D. Carrington, Interim Executive Director of the OHRC. Additionally, White has submitted a document titled "Interview Summary for Barbara Smith,"

dated February 10, 2010, with the notation "OHRC 016-A10ED Patricia White v. L.E. Rader."

[*Id.* at 12-14].  That document appears to summarize an interview of White's supervisor, Smith, by an unknown OHRC representative.  The summary recounts the following question by the interviewer and answer by Smith:

> 6.  Do you know of others here who have brought cell phones onto the property?  If so, what happened with those persons?  What were their races?
>
> Ms. Triplett had done this—as had Ms. Sherman.[4]  Smith said the management went back and did something to them after the disparate treatment was raised.  Smith said they play favorites there and do not enforce the rules consistently.  It really depends a lot on who's down at the security gate and how well you know them.

[*Id.* at 13].

## II. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  A court must examine the factual record in the light most favorable to the party opposing summary judgment.  *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

---

[4]In her Charge of Discrimination, White identified Sherman as a white worker who had a cell phone incident and was not dismissed. [Dkt. #28, Ex. 1 at 2]. She also testified in her deposition that in her discovery responses she identified Sherman a teacher who had been treated differently than her.  [Dkt. #24, Ex. 5, White Dep., 122:15-20]. The record is silent as to the disposition of the incident involving  Sherman.

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986) (citations omitted).

 "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier

of fact could resolve the issue either way. . . .  An issue of fact is 'material' if under the

substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670

(citations omitted).  In essence, the inquiry for the court is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will

be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the

plaintiff." *Id.* at 252.

### III. *McDonnell Douglas* Burden Shifting Standard

Under the burden shifting framework pronounced in *McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 802-804 (1973), a plaintiff must initially establish each element of a prima facie

case of discrimination.  After establishment of a prima facie case, the burden shifts to the

employer to offer a legitimate nondiscriminatory reason for its employment decision.  If the

employer comes forward with a nondiscriminatory reason for its actions, then the burden reverts

to the plaintiff to show that "there is a genuine dispute of material fact as to whether the

employer's proffered reason for the challenged action is pretextual–i.e., unworthy of belief." *Id.;*

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

To establish a prima facie case of discrimination White must show that (1) she is a

member of a protected class; (2) she suffered an adverse employment action, and (3) disparate

treatment among similarly situated employees.  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149

(10th Cir. 2005).

## IV. Discussion

### A. Race Discrimination Claim

The State has conceded that White, an African American, is a member of a protected

class and—to the extent she claims her termination is the "adverse action" complained of—she

suffered an adverse action.[5]

With respect to the third prong of the prima facie case—disparate treatment—White

alleges,  "A couple of other people, not black or handicapped, were found at the security gate

with cell phones about the same time as Plaintiff. They were disciplined only *after* Plaintiff and

her supervisor complained about disparate treatment for Plaintiff."  [Dkt. #28 at 3-4, Statement

of Material Facts in Dispute, ¶9].  In support of this statement, White cites the OHRC

Determination, Case Summary and Interview Summary. [*Id.*].  White also relies on the OHRC

Determination as proof that the OJA's stated legitimate reason for terminating her—that bringing

a cell phone into a penal institute violates OJA policy—was pretext.   And, as set forth below,

she makes identical arguments with respect to her ADA discrimination and retaliatory discharge

claims.  Thus, the admissibility of the OHRC Determination and related documents is a critical

issue.

---

[5] However, to the extent White contends the "adverse action" was the preparation of the
Multipurpose Report regarding her cell phone, the State disputes this constitutes an "adverse
action" for purposes of a Title VII race discrimination claim. [Dkt. #24 at 20].  Adverse
employment actions "constitute[] a significant change in employment status, such as hiring,
firing, failing to promote, reassignment with significantly different responsibilities, or a decision
causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th
Cir. 2003) (quotation omitted).  However, a "mere inconvenience or alteration of job
responsibilities" is not considered to be an adverse employment action.  *Sanchez v. Denver Pub.
Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).  During oral argument, White's counsel stated the
adverse action complained of was termination of White's employment.

At trial, the question of whether a report of this nature should be admitted into evidence at trial rests within the sound discretion of the trial court. *Hall v. Western Prod. Co.,* 988 F.2d 1050, 1057 (10th Cir. 1993) (citing *Perrin v. Anderson*, 784 F.2d 1040, 1046-47 (10th Cir. 1986)). The Tenth Circuit has held that, in civil actions, agency reports are admissible under Fed. R. Evid. 803(8) if they are prepared pursuant to authority granted to the agency by law and are trustworthy. *Hall*, 988 F.2d at 1057-58. The rule covers both factual findings and conclusions and opinions found in evaluative reports of public agencies. *Id.* at 1058. However, pursuant to Fed. R. Evid. 403, the court has the discretion to determine when otherwise relevant—and thus admissible—evidence should be excluded. *Id.*

In *Hall*, the employer attempted to introduce into evidence a Wyoming Fair Employment Commission ("WFEC") report which found no evidence of age discrimination. *Id.* at 1057. The district court refused to admit the exhibit, determining that all of the evidentiary matter before WFEC could be presented to the jury in some other form or fashion and, therefore, the only purpose to be served by admitting the report would be to suggest to the jury that it should reach the same conclusion as the WFEC. *Id.* at 1058. Further, the district court determined that the risk of unfair prejudice to the plaintiff substantially outweighed any relevance of the WFEC findings of fact and conclusions of law. *Id.* The Tenth Circuit affirmed the district court's decision, finding no abuse of discretion. *Id.*

Because the issue of admissibility of state agency records arises at the summary judgment stage, and plaintiff relies on the OHRC documents to establish disparate treatment and pretext, *Simms v. Oklahoma ex rel. Dept. of Mental Health*, 165 F.3d 1321 (10th Cir. 1999) is particularly instructive. In *Simms*, a terminated firefighter brought a Title VII race discrimination and retaliation action against the Oklahoma Department of Mental Health. The

district court granted defendant's motion for summary judgment, and the plaintiff appealed.  In affirming the district court's summary judgment ruling, the Tenth Circuit rejected plaintiff's argument that a favorable letter of determination by the EEOC established a material issue of fact about whether the employer's proffered reason for denying him a promotion was pretext. The court stated:

> Finally, Mr. Simms makes much of the fact that the EEOC had issued a favorable letter of determination regarding his claim of race-based failure to promote, and that he had represented the letter to the district court.  However, *when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one*.

*Id.* at 1331 (emphasis added).

Similarly, in *Makeen v. Comcast*, 2011 WL 3300392, at *6 (D. Colo. May 6, 2011), the district court held that favorable decisions for the plaintiff by the Colorado Civil Rights Commission and the Colorado Department of Labor and Employment hearing officer did not create a genuine issue of material fact.  The court stated:

> First, the United States Supreme Court has held that unreviewed state administrative proceedings have no preclusive effect on a  federal discrimination lawsuit.  *University of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986).  Rather, Congress intended a plaintiff to have a trial de novo on these claims when the claimant goes into federal court. *Id.*
>
> Defendant compares the Colorado Civil Rights Commission's July 2009 determination to an EEOC letter of determination as evaluated by the Tenth Circuit in *Simms v. Oklahoma*, 165 F.3d 1321, 1331 (10th Cir. 1999).  The *Simms* plaintiff emphasized the EEOC's favorable letter of determination regarding his race-based discrimination claim.  *Id.*  The court found that "when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one." *Id.* Similarly, in this matter the Court adjudicates the motion for summary judgment based on the presentation of independent facts by both sides, where relevant and admissible.  As stated below, the Court concludes that Plaintiff fails to establish a genuine issue of material fact based on this independent evaluation, and like *Simms*, the Colorado Civil Rights Commission's determination does not create one.

*Id.*

Here, as in *Simms* and *Makeen*, White relies solely on the OHRC determination and related documents to support her claims of disparate treatment and pretext.  She has presented no independent evidence (other than her own belief) of disparate treatment based on race.  McElroy, who submitted the Multipurpose Report on her, is black. Two other individuals caught trying to sneak cell phones were either banned from the facility (in the case of Triplett, the white school teacher) or fired (in the case of Chance, the black employee caught in September 2009).[6]

Even if plaintiff had presented evidence establishing a prima facie case, defendant has come forward with a legitimate nondiscriminatory reason for terminating her, i.e., that she violated OJA policy prohibiting cell phones in penal institutions.  And White's only "evidence" of pretext is the OHRC determination and related documents.  Therefore, defendant is entitled to summary judgment on the race discrimination claim.

### B. ADA Discrimination

To establish a prima facie case of discrimination under the ADA, 42 U.S.C. § 12101, *et seq.*, plaintiff must show that she is a disabled person as defined by the ADA; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and her employer discriminated against her because of her disability.  *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012).

For purposes of summary judgment, the State does not dispute the first two elements of plaintiff's prima facie case—that she is disabled and was qualified to perform the essential functions of her job.  However, White has failed to introduce *any* evidence of the third element—

---

[6] Citing the OHRC documents, White complains action was taken against Triplett and Chance only after she and her supervisor, Smith, complained of disparate treatment.  *See* Case Summary [Dkt. #28, Ex. 1 at 6] and Interview Summary [Dkt. #28, Ex. 1 at 13].  However, White introduced no independent evidence supporting this claim, and the record establishes White filed her charge with the OHRC on October 23, 2009, well after Triplett and Chance were disciplined.

that she was discriminated against because of her disability.  Moreover, even had White come

forth with evidence of disability discrimination, the State has proffered a legitimate

nondiscriminatory reason for terminating her, and White has failed to introduce admissible

evidence that the stated reason is pretext.  The State is entitled to summary judgment on the

ADA discrimination claim.

### C. Retaliation

White contends she was terminated because she complained about the lack of

handicapped parking facilities.

The ADA prohibits both "discriminat[ing] against any individual because such individual

has opposed any act or practice made unlawful by this chapter" and "interfer[ing] with any

individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42

U.S.C. § 12203(a), (b).  To establish a prima facie case of retaliation under the ADA, White must

show (1) she engaged in a protected activity, (2) a reasonable employee would have found the

challenged action materially adverse, and (3) a causal connection existed between the protected

activity and the material adverse action. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595

F.3d 1126, 1131 (10th Cir. 2010).

For purposes of summary judgment, the State does not dispute the first element—that

White engaged in a protected activity by voicing complaints about handicapped parking.  The

court—also for purposes of summary judgment—assumes the plaintiff suffered a material

adverse action, i.e., termination.[7]  However, White has failed to come forward with any

admissible evidence of the third element—a causal connection between the protected activity and

the material adverse action.  She submitted no written complaint about handicapped parking.

---

[7] The State contends the action complained of is the incident report, which does not qualify as a "materially adverse action" under federal discrimination law.  Plaintiff argues the adverse action was her termination.

Although she testified she voiced complaints to security gate personnel, she could not identify any of them by name.  Both Lott and McElroy testified they never heard White make any type of complaint regarding the unavailability of handicapped parking.   Finally, White testified she had no reason to believe Moriarity's recommendation of termination had any relationship to her complaints about handicapped parking.  [Dkt. #24, Ex. 5, 119:1-6].  She does not think he was even aware she had complained about handicapped parking, and she testified there was no discussion about handicapped parking in the August 20 meeting with Moriairty.  [*Id.*, 119:7-17].

The *only* admissible evidence White has submitted that could conceivably link her discharge to complaints about handicapped parking is her testimony that when she came in on the morning of August 7, she complained to Lott about having to park far away.  But she also admitted she did not specifically complain about lack of handicapped parking.  This scintilla of evidence is insufficient to rescue her claim from summary judgment.  *See Anderson*, 477 U.S. at 252.

Further, as discussed above, the State proffered a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff has presented no evidence, other than the OHRC determination, that the reason is a pretext.

The State is entitled to summary judgment on White's retaliation claim.

## V. Conclusion

For the reasons set forth above, the State's Motion for Summary Judgment is granted.[8]

ENTERED this 18th day of November, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[8] The court does not address the merits of defendant's claim of Eleventh Amendment immunity, as the granting of summary judgment on the merits of plaintiff's claim moots that argument.